IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
July 09, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
       DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:19-cr-00024 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| JOVITO RAJNEESH VAUGHN, ) | Senior United States District Judge |
| Defendant-Petitioner ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Jovito Rajneesh Vaughn's motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 505. The Federal Public Defender filed a supplemental motion on Vaughn's behalf. ECF No. 514. The government filed a response in opposition to Vaughn's motion. ECF No. 515. As set forth below, the court will **DENY** Vaughn's motions.

### I. BACKGROUND

On October 3, 2019, Vaughn was charged in a superseding multi-count, multi-defendant indictment with one count of conspiring to distribute a quantity of drugs including methamphetamine, cocaine, heroin, and fentanyl, and distributing 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(A) (Count Four); and three counts of distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts Six, Seven, and Eight). Superseding Indictment, ECF No. 46 at 2–5.

On May 19, 2021, Vaughn entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to conspiring to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B), a lesser included offense of Count Four of the Superseding Indictment. ECF No. 312 at 1–2. Vaughn faced a statutory mandatory

minimum sentence of 5 years and a maximum sentence of 40 years. Id. at 2. The parties agreed to a sentencing range of 96 to 144 months. Id. at 3. On January 7, 2022, Vaughn was sentenced to a term of 132 months, to be followed by a 4-year period of supervised release. J., ECF No. 406 at 2–3. Vaughn is incarcerated at USP Lee with an expected release date of October 22, 2029.[1]

Vaughn has a 15-year-old son, N.P., whose mother was incarcerated on March 27, 2023. ECF No. 514 at 4. N.P. is currently in the care of his maternal grandmother, V.P., in Charlotte, North Carolina. Id. at 4. In a letter attached to Vaughn's motion, V.P. reports that N.P has begun to exhibit behavioral issues as a result of his parents' incarceration and further reports that she has been struggling financially. ECF No. 505-3. V.P. asks that Vaughn be released to assist financially and to provide N.P. with fatherly guidance. Id.

Vaughn also attached a letter from his cousin, in which she indicates that Vaughn's mother has been diagnosed with several illnesses and has been hospitalized several times. ECF No. 505-4. In the letter, Vaughn's cousin asks that Vaughn be released to support both N.P. and Vaughn's mother. Id.

Vaughn argues he is entitled to compassionate release because N.P.'s mother, his primary caregiver, has become incapacitated and is no longer able to care for N.P. ECF No. 505 at 6. To that end, Vaughn also states that V.P. is only caring for N.P. temporarily. Id. at 6–7. Vaughn argues that he should be released so that he can care for his mother and his son. Id. Vaughn further asserts that he has made strides towards rehabilitation that weigh in favor of compassionate release. Id. at 7. Finally, Vaughn avers that the sentencing ranges for

---

[1] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Jovito Vaughn") (last viewed June 13, 2025).

2

methamphetamine convictions have changed since his conviction and, under these changes, he would be subject to a lower sentencing range. Id. at 6.

## II. Analysis

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
> . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Accordingly, Vaughn's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F. 4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of

3

Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Vaughn sent a request for compassionate release to the warden of USP Lee on September 5, 2023, ECF No. 505-1, and filed his motion more than 30 days later on October 7, 2023. ECF No. 505-1 at 1; ECF No. 505 at 9. The government does not contest that Vaughn has exhausted his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A). Resp., ECF No. 515 at 2 n.1. Accordingly, the court finds that Vaughn has satisfied the statute's exhaustion requirement.

The court must next consider whether it should reduce the term of imprisonment. The United States Sentencing Commission recently amended the section of the guidelines that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised guidelines will be applied to Vaughn's motion.

Under USSG §§ 1B1.13(b)(3)(A), a defendant may show an extraordinary and compelling reason warranting compassionate release if he can show "the death or incapacitation of the caregiver of the defendant's minor child...." Under USSG § 1B1.13(b)(3)(C) a person may show an extraordinary and compelling reason for compassionate release if he can demonstrate "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

4

## A. N.P.'s Caregiver

Vaughn begins by arguing that the incarceration of N.P.'s mother has left N.P. without a caregiver. ECF No. 514 at 4–6. Vaughn argues that his release will "prevent the 'irretrievable destruction' of his family life" that will result from N.P. being without his parents. Id. at 7.

Showing incapacitation is difficult, with courts typically only recognizing the incapacitation of a caregiver when, due to severe injury or illness, they are incapable of caring for a child. See United States v. Guest, No. ELH-16-0499, 2022 WL 2104492, at *13 (M.D.N.C. June 9, 2022) ("[I]ncapacitation is a high bar. The defendant must show either that the caregiver suffered a severe injury … or suffers from a severe illness … that renders the caregiver incapable of caring for the child.") (citing BOP Program Statement § 5050.50(5))[2]. To find a caregiver incapacitated "courts have generally understood the term to require severe impairment of an individual's ability to perform the essential requirements of caring for a minor child." United States v. Rosario-Cruzado, No. 24-6365, 2025 WL 1540932, at *2 (4th Cir. May 30, 2024).

Vaughn asserts that N.P.'s mother has been incapacitated by her incarceration and the government does not dispute that the incarceration of N.P.'s mother rendered her incapacitated. ECF No. 515 at 4; see also United States v. Ray, No. 3:19-CR-46, 2023 WL 3411024, at *2 (N.D. Ind. May 12, 2023) ("If the incapacitation is legal in nature, such as the caretaker's incarceration, this may, depending on the circumstance, constitute the type of

---

[2] While courts are not bound by BOP Program Statements, the BOP criteria are helpful guidance. United States v. Roberts, No. CCB-13-0407, 2021 WL 5744687, at *1 (D. Md. Dec 1, 2021).

5

extraordinary and compelling situation warranting compassionate release."). Thus, for the purposes of this motion, the court will consider incarceration to suffice as incapacitation.

However, the incapacitation of N.P.'s mother is relevant only if she is the primary caregiver and it appears that she has not been the primary caregiver since her incarceration two years ago, on March 27, 2023. ECF No. 514 at 4. It is unclear if V.P. began caring for N.P. at that time, but she has been taking care of him since at least September 5, 2023. See Inmate Request to Staff, ECF No. 505-1 at 2.

Courts generally deny compassionate release when another suitable caregiver is available for the defendant's child. See United States v. Lottier, No. 7:16-cr-030, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases denying compassionate release where there was an available caregiver for defendant's child); see also Guest, 2022 WL 2104492, at *13 ("[I]n the absence of evidence that an inmate is the sole available caregiver for his child, district courts typically find that the inmate's family circumstances do not amount to an extraordinary and compelling reason within the meaning of 18 U.S.C. § 3582(c)(1)(A)."). Here, N.P. has a suitable caregiver in V.P. and the incarceration of N.P.'s mother does not amount to an extraordinary and compelling reason for a sentence reduction.

To the extent that Vaughn is arguing that V.P. has become incapacitated, he has not made the requisite showing. While V.P. has written a letter to the court, ECF No. 505-3, in which she detailed financial hardship and difficulties raising N.P. without Vaughn's support, her circumstances do not rise to the level of incapacitation. Courts generally find that a caregiver's struggles in raising a child do not merit compassionate release. See Lottier, 2022 WL 1522220, at *3 ("Where a caretaker is struggling to care for a child, but not incapacitated,

6

courts have denied compassionate release."); United States v. Radetski, No. 7:17-CR-82, 2021 WL 2056993, at *2 (E.D.N.C May 21, 2021) (denying compassionate release where the defendant "contends that his children's mother is struggling to care for them but he does not state that the mother is incapacitated or unable to care for their child."). Because neither Vaughn nor V.P. has provided evidence that V.P. is incapacitated or incapable of caring for N.P., Vaughn's motion for compassionate release based upon his allegation that N.P.'s caregivers have become incapacitated is **DENIED**.

### B. Caring for Mother

While Vaughn has asserted that his mother is suffering with severe illnesses and that he needs to be released to care for her, he has not alleged that she is incapacitated nor provided any evidence of her illnesses. See ECF No. 514 at 2 (informing the court that Vaughn's mother declined to permit the filing of any of her medical records). As the movant bears the burden of proof and no proof has been offered, Vaughn fails to meet his burden. See United States v. Melvin, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. 2023) ("The defendant seeking compassionate release bears the burden of showing that extraordinary and compelling reasons warrant a sentence reduction."). Because Vaughn has failed to establish the incapacitation of his mother, his motion based on his desire to care for his mother is **DENIED**.

### C. Rehabilitation

Finally, Vaughn asserts that he has made strides towards rehabilitation by partaking in "a number of programs." ECF 505-1 at 2. Indeed, Vaughn has pursued a variety of educational and wellness programs while incarcerated and is actively pursuing his GED. Id. at 5. While Vaughn's participation in programming is commendable, "rehabilitation of the defendant is

not, by itself, an extraordinary and compelling reason for purposes of [the] policy statement." USSG § 1B1.13(d) (citing 28 U.S.C. § 994(t)). As Vaughn has not identified any other reason for a sentence reduction, Vaughn's motion based on his efforts towards rehabilitation will be **DENIED**.

### III. Methamphetamine Guidelines

Vaughn claims that there are changes to the sentencing guidelines regarding the calculations for methamphetamine offenses and that these changes would subject him to a lower guideline range if he were sentenced today.[3] ECF No. 505 at 6. However, there have been no changes to the guidelines since Vaughn's conviction that would manifest any difference in methamphetamine sentencing calculations. USSG § 2D1.1(c). There are proposed changes to the guidelines regarding the calculation of methamphetamine offenses in the Federal Register, though these changes are not confirmed nor final. Notice of Proposed Amendments, 90 Fed. Reg. 8968 (Feb. 4, 2025). Among the proposed changes is the elimination of any references to "Ice" methamphetamine or methamphetamine (actual), leaving only methamphetamine mixture. Id. at 8993. The new weight tables under this proposed change would either be set to the quantity thresholds currently attributed to methamphetamine mixture or methamphetamine (actual). Id. As no changes have impacted the calculation of methamphetamine sentences since Vaughn's conviction, his motion for sentence reduction based on the methamphetamine guidelines is **DENIED**.[4]

---

[3] To the extent Vaughn is arguing that he was wrongly sentenced in 2021, he would need to bring that claim via a 28 U.S.C. § 2255 motion or § 2241 if appropriate. See United States v. Ferguson, 55 F.4th 262 (4th Cir. 2022).

[4] The court notes that Vaughn was sentenced under the methamphetamine mixture guidelines. See Plea Agreement, ECF No. 312 at 1–2; J., ECF No. 406 at 1.

Because the court has determined that Vaughn has not shown an extraordinary and compelling reason for a sentence reduction, it will not address the 18 U.S.C. § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

## IV. Conclusion

For the above-stated reasons, the court **DENIES** Vaughn's motions for compassionate release, ECF Nos. 505, 514. The Clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: July 9, 2025

Michael F. Urbanski
Senior United States District Judge